IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| KALEO AARONA, LUANNE | ) | CV. NO. 05-00197 DAE/BMK |
| FUJINAKA, STELLA GALON, | ) | |
| ERIC GILL, BRIAN GOO, | ) | |
| GODFREY MAESHIRO, | ) | |
| DOMINADOR MOLINA, ROBIN | ) | |
| MURAYAMA, TAMMY OMOSO, | ) | |
| ILIA PATLIDZANOV, BRUCE | ) | |
| ROBERTSON, MARIA | ) | |
| SALANTES, WILLIAM SIMON, | ) | |
| HERNANDO TAN, LOIS | ) | |
| TANAKA, On Behalf of Themselves | ) | |
| and All Others Similarly Situated and | ) | |
| Derivatively on Behalf of UNITY | ) | |
| HOUSE INCORPORATED, and | ) | |
| UNITE HERE LOCAL 5, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITY HOUSE INCORPORATED, | ) | |
| a Hawai`i nonprofit corporation, | ) | |
| | ) | |
| Nominal Defendant, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ANTHONY A. RUTLEDGE, SR., | ) | |
| AARON RUTLEDGE, ANTHONY | ) | |
| RUTLEDGE, JR., ARLENE ILAE, | ) | |
| RANDALL HARAKAL, | ) | |
| RANDOLPH BORGES, ADAM | ) | |
| ENOS, BERNA IOSUA, MICHAEL | ) | |
| GREEN, NORBERTO CASTILLO, | ) | |

MEL KAHELE, SONNY DUDOIT,        )
JAMES BOERSEMA, and ROBERT      )
FISHMAN, JOHN DOES 1-10,         )
JANE DOES 1-10, DOE             )
CORPORATIONS 1-10, DOE          )
PARTNERSHIPS 1-10, and DOE       )
ENTITIES 1-10,                   )
                                 )
        Defendants.              )
_____ )
                                 )
ADAM ENOS,                       )
                                 )
        Defendant/Counter-       )
        Claimant,                )
                                 )
   vs.                        )
                                 )
KALEO AARONA, Et. Al.,           )
                                 )
        Plaintiffs/Counter-      )
        Defendants.              )
_____ )

ORDER GRANTING IN PART AND DENYING IN PART THE FOLLOWING
MOTIONS:  NOMINAL DEFENDANT UNITY HOUSE, INC.'S MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT ("FAC");
DEFENDANT ARLENE ILAE, ET AL.'S MOTION TO DISMISS FAC;
DEFENDANT AARON RUTLEDGE'S MOTION TO DISMISS FAC;
DEFENDANT ANTHONY A. RUTLEGE, SR.'S MOTION TO DISMISS FAC;
JAMES BOERSEMA AND ROBERT FISHMAN'S MOTION TO DISMISS; and
COUNTERCLAIMANT ADAM ENOS'S MOTION TO DISMISS, WITHOUT
PREJUDICE TO SEEK LEAVE TO AMEND THE FAC WITH RESPECT TO
SOME COUNTS; and ORDER DENYING PLAINTIFFS' COUNTER MOTION
FOR LEAVE TO ADD JAMES BOERSEMA, ROBERT FISHMAN AND ADAM
ENOS AS PARTY DEFENDANTS AS MOOT

2

Pursuant to Local Rule 7.2, Defendants Boersema, Fishman, and Enos' motions will be decided without a hearing and taken under advisement. The Court heard Defendants Arlene Ilae, et al., Unity House, Incorporated, Aaron Rutledge, and Anthony A. Rutledge's Motions on June 4, 2007. T. Anthony Gill, Esq., and David A. Sgan, Esq., appeared at the hearing on behalf of Plaintiffs; Jeffrey Portnoy, Esq., and Calvert Chipchase, IV, Esq., appeared at the hearing on behalf of Defendant Unity House, Inc.; Nathan Yoshimoto, Esq., appeared at the hearing on behalf of Defendant Anthony A. Rutledge; Eric Seitz, Esq., and Ronald Kim, Esq., appeared at the hearing on behalf of Defendants Arlene Ilae, et al; Gary Y. Shigemura, Esq., and Joyce M. Brown, Esq., appeared at the hearing on behalf of Defendant Randall Harakal; Robert John Crudele, Esq., appeared at the hearing on behalf of Defendant Aaron Rutledge; Lance Castroverde, Esq., appeared at the hearing on behalf of Defendant Adam Enos; Robert A. Marks, Esq., appeared at the hearing on behalf of Defendants James Boersema and Robert Fishman; and Pablo Quiban, Esq., appeared at the hearing on behalf of Defendant Mel Kahele. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS IN PART and DENIES IN PART the following motions: Nominal Defendant Unity House, Inc.'s Motion to Dismiss Plaintiffs' First Amended

3

Complaint ("FAC"); Defendant Arlene Ilae, et al.'s Motion to Dismiss FAC; Defendant Aaron Rutledge's Motion to Dismiss FAC; Defendant Anthony A. Rutlege, Sr.'s Motion to Dismiss FAC; James Boersema and Robert Fishman's Motion to Dismiss; and Counterclaimant Adam Enos's Motion to Dismiss (WITHOUT PREJUDICE to seek leave to amend the FAC with respect to some counts); and DENIES Plaintiffs' Counter Motion for Leave to Add James Boersema, Robert Fishman and Adam Enos as Party Defendants AS MOOT.

Counts I, II, V, and VIII are dismissed without prejudice for failure to meet the numerosity requirement. Count IV is dismissed without prejudice for failure to link the alleged fraudulent proposal with the number of proxy votes required to authorize the challenged action of change of membership status. Count VI is dismissed with prejudice for failure to state a claim. Count IX is dismissed without prejudice for failure to allege facts to establish that Unity House is a labor union pursuant to 29 U.S.C. § 501.

<u>BACKGROUND</u>

Plaintiffs allege that members of the Rutledge family have always maintained positions as officers and directors of Unity House, Inc. ("Unity House"). On or around November 13, 2003, the Board of Directors of Unity House (the "Board") met to approve a resolution for presentation to its members

4

whereby Unity House would convert to a non-membership based corporation. Plaintiffs allege that Defendants Anthony A. Rutledge, Sr. ("Tony Rutledge") and Aaron Rutledge failed to disclose to the Board their alleged pattern and practice of obtaining Unity House services and monies for their own personal benefit.  After the Board meeting, Unity House published a notice of a special meeting of its members to consider a proposed amendment to the articles of incorporation that would, among other things, change Unity House from a nonprofit corporation with members to one without members (the "Notice").  The Notice contained a summary of purported advantages and disadvantages of converting to a nonprofit corporation without members.  Plaintiffs allege that the Notice contained material misrepresentations, misleading statements regarding material facts, and material omissions, all of which were allegedly calculated to induce the members of Unity House to vote to relinquish their membership rights.  At the meeting, Tony Rutledge exercised all of his voting proxies, which constituted a sufficient number to approve the resolution.  Plaintiffs contend that Tony Rutledge obtained the proxies through fraud.

On March 22, 2004, Unity House filed its "Articles of Amendment in the matter of Unity House, Incorporated" with the Department of Commerce and Consumer Affairs ("DCCA").  However, on March 23, 2004, the Board adopted an

Amended and Restated Articles of Incorporation, which was filed with the DCCA on the following day.  Plaintiffs allege that the Amended and Restated Articles of Incorporation differs significantly from the stated purposes set forth at the Special Meeting.

Plaintiffs allege that once Unity House no longer had oversight by the membership, the individual Rutledge Defendants and Unity House's then Board engaged in a number of instances of malfeasance, including but not limited to, mismanaging Unity House's fiscal affairs, making improper distributions to family members and friends, engaging in self-dealing, converting Unity House assets, and causing Local 5 to be affected by organizing and raiding activity at Kaiser Hospital and Hale Nani Rehabilitation Center by the Hawaii Hospital and Health Care Workers' Union ("HHHCWU") and another union.

On March 20, 2005, Plaintiffs filed their Complaint.  The Complaint did not list Boersema, Fishman, or Enos (collectively the "New Director Defendants") as defendants.  On April 26, 2006, Unity House filed a motion to dismiss on the basis that Plaintiffs' causes of action did not lie directly against Unity House, and that Plaintiffs had failed to adequately plead any derivative claims.  On June 16, 2006, other defendants filed a motion to dismiss asserting, inter alia, that this Court did not have jurisdiction and that Plaintiffs did not have

6

standing as required under Article III of the United States Constitution.  On July 21, 2006, this Court granted in part and denied in part Unity House's and the other defendants' motions to dismiss ("July 21, 2006 Order").  This Court also granted Plaintiffs leave to amend their Complaint.

On October 13, 2006, Plaintiffs sent a pre-suit demand letter and draft First Amended Complaint to the Board and Unity House's counsel requesting that the Board bring suit in the corporation's name.  In the event Unity House declined to bring suit, Plaintiffs stated they would bring derivative causes of action on behalf of Unity House.

On November 17, 2006, Plaintiffs filed their Motion for Leave to File First Amended Complaint, and attached a proposed First Amended Complaint. The New Director Defendants were not named as defendants in the proposed First Amended Complaint, and Plaintiffs did not seek leave to add additional parties. On December 11, 2006, having not received a response from the Board regarding the demand, Plaintiffs stated in their reply brief to their motion to amend their complaint that "[i]f Unity House rejects Plaintiffs' demand, Plaintiffs should be allowed to replead a wrongful refusal claim against the current Unity House directors. . . . Plaintiffs should not be penalized for Unity House's inaction in the face of a formal demand letter."  (Docket # 131 at 12. )

7

On January 19, 2007, the Board informed the Court and Plaintiffs that it determined not to investigate further the allegations of the draft First Amended Complaint.  (FAC at Ex. C.)  The Board explained that it had tasked Boersema and Fishman, the court-appointed directors, with investigating Plaintiffs' demand and evaluating whether it was necessary to form a special litigation committee ("SLC").  Boersema and Fishman concluded that the derivative claims would not likely result in any meaningful benefit to Unity House and thus, a SLC should not be established.

On February 7, 2007, Magistrate Judge Kurren granted Plaintiffs leave to amend their complaint.  Plaintiffs filed the First Amended Complaint ("FAC") on February 9, 2007, alleging various causes of action, including derivative claims, and naming Boersema, Fishman and Enos as defendants.  The FAC contains the following causes of action:

Count I:     Derivative claim for breach of fiduciary duty
Count II:    Derivative claim for conversion
Count III:   Class action for fraudulent amendment of Unity House's Articles of Incorporation
Count IV:    Equitable Action for Proxyholder Abuse
Count V:     Claim for removal of directors pursuant to Hawaii Revised Statutes section 414D-140
Count VI:    Direct and Class Civil RICO claim
Count VII:   Local 5's Direct Civil RICO Claim
Count VIII:  Derivative Civil RICO claim
Count IX:    Derivative Claim for violation of the LMRDA

8

On March 29, 2007, Unity House filed a motion to dismiss the FAC. On March 27, 2006, Defendants Arlene Ilae, Anthony Rutledge, Jr., Randolph Borges, Berna Isoua, Michael Green, Norberto Castillo, and Sunny Dudoit ("Moving Defendants") moved to dismiss the FAC and joined in Unity House's motion. Defendants Tony Rutledge and Aaron Rutledge joined in Unity House's and Moving Defendants' motions on March 29, 2007, and on March 30, 2007, filed their own motions to dismiss the FAC. Defendant Randall Harakal filed a joinder to Unity House's motion and Moving Defendants' motion on March 30, 2007. Defendant Mel Kahele also joined in the various motions. Opposition and reply briefs were filed.

On March 30, 2007, Boersema and Fishman filed their motion to dismiss, and on April 20, 2007, Enos filed a motion to dismiss and a joinder to each of the above motions to dismiss. Boersema, Fishman and Enos argue that the FAC should be dismissed with respect to them because they were not properly added as parties and because the FAC fails to state a claim for relief against them. Plaintiffs filed their opposition to both motions on May 4, 2007, and Boersema and Fishman filed a reply brief on May 11, 2007. On March 29, 2007, Enos filed an Answer to the FAC. Defendants Boersema and Fishman have not filed an answer.

9

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Review is limited to the contents of the complaint.  <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  <u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).  A complaint does not need to include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965. (2007).  However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action.  <u>Id.</u> at 1966.  Plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence.  In other words, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face.  <u>Id.</u> at 1974.  "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."  <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988).

## DISCUSSION

Defendants seek to dismiss Counts I, II, V, and VIII on the basis that Plaintiffs do not meet the numerosity requirement and/or on the basis that they lack

10

derivative standing.  Defendants further assert that the business judgment rule

applies to Plaintiffs' derivative claims, and thus, Plaintiffs lack derivative standing

to bring all such claims.  Defendants argue that Count IX should also be dismissed

for lack of standing to bring a derivative claim, and if not so dismissed, it should

be dismissed on the basis that Plaintiffs failed to properly plead that Unity House is

a labor organization.  Defendants argue that Count IV should be dismissed because

it is a novel claim and Plaintiffs cannot establish a link between the fraudulent

proposal and the proxy votes required to authorize the action.  Defendants contend

that Count VI should be dismissed because this Court already ruled that Plaintiffs

are not entitled to monetary damages, and since a private plaintiff is not entitled to

injunctive relief under the civil RICO statute.  Defendants seek to dismiss Count

VII on the grounds that Plaintiff Local 5 lacks standing since it cannot establish a

sufficiently concrete injury caused by the predicate acts pursuant to the civil RICO

statute.  Defendants further argue that Counts VI, VII and VIII should be dismissed

because Plaintiffs have not sufficiently alleged fraud.  Defendants contend that

Counts I, II, III, VI, VIII and XI, should be dismissed because Plaintiffs do not

adequately represent former members of Unity House and thus, are not proper

representatives to bring class and derivative claims.

I.      Numerosity Requirement

      A.      Derivative Claims: Count I for Breach of Fiduciary Duty, Count II for Conversion, Count VIII for Civil RICO

      Defendants argue that Plaintiffs' derivative claims in Counts I, II, and VIII fail as a matter of law because Plaintiffs have not satisfied the numerosity requirements set forth in Hawaii Revised Statute section 414D-90 and 414D-140(a).

      Section 414D-90 provides that "[a] proceeding may be brought on behalf of a domestic or foreign corporation to procure a judgment in its favor by any member or members having five per cent or more of the voting power, or by fifty members, whichever is less . . . ." Haw. Rev. Stat. § 414D-90. This requirement applies to state law derivative claims for breach of fiduciary duty in Count I and conversion in Count II. Defendants allege, and Plaintiffs do not contest, that this requirement also applies to the federal civil RICO claim in Count VIII. The cases cited by Defendants do not directly deal with a state's numerosity requirement, however, the cases do hold that state law requirements for a derivative cause of action must be met for a shareholder to have standing to bring a derivative RICO claim. See Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 744 (5th Cir. 1989) ("On occasion we have incorporated, although

not always expressly stating so, standing requirements derived from state laws . . .

into the civil RICO statute."); <u>Allison on Behalf of Gen. Motors Corp. v. Gen.</u>

<u>Motors Corp.</u>, 604 F. Supp. 1106, 1120 (D. Del. 1985) (in deciding a civil RICO

claim, the Court was unable to discover "anything in the RICO statute or its

legislative history indicating that the policy underlying RICO is inconsistent with

director termination of derivative litigation and finding that Delaware state law

controlled whether the amended complaint sufficiently alleged wrongful rejection

of plaintiff's demand to the corporation to bring a lawsuit); <u>Nordberg v. Lord, Day</u>

<u>& Lord</u>, 107 F.R.D. 692, 700 (S.D.N.Y. 1985) ("Derivative action requirements

 . . . are not inconsistent with the policies underlying RICO . . ."). This Court sees

no reason to require otherwise. Accordingly, Hawaii's numerosity requirement to

bring derivative claims also applies to a derivative civil RICO claim.

        In the FAC, Plaintiffs allege that "[f]or purposes of the numerosity

requirement of HRS § 414D-90 (fifty members), Plaintiffs and the Class represent

well over the fifty former Unity House members necessary to bring the derivative

causes of action Counts I, II and VIII." (FAC ¶ 175.) Plaintiffs, however, have not

named at least fifty individuals as parties to this suit who are filing on behalf of the

corporation. Plaintiffs list only 15 individuals as parties to this lawsuit. The

statute is quite clear, a proceeding may <u>be brought by</u> members having five per

13

cent or more of the voting power, or by fifty members, whichever is less.  Haw.

Rev. Stat. § 414D-90.  Certainly, identifying only 15 individuals and making a

claim that the uncertified class represents the number of individuals needed, is not

the same as bringing a proceeding by the correct number of persons.  In order to

know whether a proceeding is being brought by the requisite number of persons,

those persons must be named in the caption and allegations describing their interest

in the corporation must be made in the body of the complaint.

Furthermore, claiming the named Plaintiffs are exemplars of a class of

more than ten thousand former Unity House members is insufficient to meet the

statute's requirements.  The purpose of the numerosity requirement in the statute is

to ensure that enough members support the lawsuit on behalf of the corporation.

See Segal v. Powers, 687 N.Y.S.2d 589, 591 (N.Y. Sup. Ct. 1999) (noting that the

purpose of the 5% standing requirement of New York's not-for-profit corporation

law is to prevent the "corporation from having to incur legal expenses in defending

litigation when there is not a showing that at the time of bringing the action that

there exists that minimum number of members supporting the suit.").  Whereas, the

"purpose of a class action is to obviate the need for all similarly situated persons to

file separate lawsuits when impractical to do so." Cummings v. Connell, 402 F.3d

936, 945 (9th Cir. 2005).  Accordingly, as a class action serves a different purpose

14

from the numerosity requirement, merely alleging that there exists a large class is insufficient to meet the statute's requirements.

With a derivative claim, there is only one lawsuit on behalf of the corporation.  The only way to be certain that enough members support the lawsuit is for their names to be listed on the caption as a party to the suit.  See Segal, 687 N.Y.S.2d at 591 (finding the plaintiff's bald allegation that he represented more than 5% of the members insufficient and "his failure to name in his pleading the persons who he asserts constitute 5% of the members of the Club warrant[ed] dismissal of the action.").

Accordingly, Plaintiffs' derivative claims in Counts I, II and VIII are dismissed for failure to meet the numerosity requirement.  In their opposition, Plaintiffs claim that their counsel represents 86 former Unity House members who were wrongfully disenfranchised of their Unity House membership rights by Defendants.  Plaintiffs do not attach any affidavits or declarations to support this claim.  However, because this number is well over 50, this Court will grant Plaintiffs leave to amend their FAC to name at least a sufficient number of Plaintiffs in the caption and the body of the complaint to meet the numerosity requirement.  Thus, Plaintiffs' derivative claims in Counts I, II and VIII are DISMISSED without prejudice.

15

B.    <u>Count V, Claim for Removal of Directors</u>

Defendants claim that Count V of the FAC, which seeks removal of individually named Defendants pursuant to Section 414D-140, fails because Plaintiffs fail to meet the numerosity requirement.

Section 414D-140(a) states that "[t]he circuit court of the county where a corporation's principal office is located may remove any director of the corporation from office in a proceeding commenced either by the corporation or its <u>members holding at least ten per cent of the voting power of any class</u> . . . ." Haw. Rev. Stat. § 414D-140(a) (emphasis added).

In their FAC, Plaintiffs state that "[u]pon information and belief, the individual Plaintiffs and the Class represent at least ten percent of the voting power of the Unity House membership before Director Defendants fraudulently transformed Unity House to a non-membership based organization." (FAC ¶ 404.) For the reasons stated above, this is insufficient to satisfy the statute. The named Plaintiffs must represent at least ten percent of the voting power.

At the hearing, Plaintiffs' counsel stated that they have 2,700 persons who could be plaintiffs. Again, a mere statement by counsel at the hearing is insufficient to withstand a motion to dismiss. Defendants argue that Plaintiffs should not be allowed to amend their FAC to add the 2,700 individuals as plaintiffs

16

because Plaintiffs cannot ensure that 2,700 persons will represent ten percent of the voting power since Plaintiffs claim that there are more than ten thousand former Unity House members.  This Court disagrees.  Although Plaintiffs have alleged that there are more than ten thousand former members, Plaintiffs should have some idea of the range of possible former members.  For example, if there are at most 20,000 former members and each member was entitled to one vote, then 2,700 individually named shareholders would represent ten percent or more of the voting power.  Therefore, because there is a possibility that Plaintiffs can cure the defect in their FAC, this Court DISMISSES Count V without prejudice.

II.    <u>Standing</u>

Defendants argue that even if Plaintiffs met the numerosity requirement, Plaintiffs do not have standing to bring their derivative causes of action in Counts I, II, VIII and IX on Unity House's behalf.

A.    <u>Equitable Standing to Bring Derivative Claims for Count I for Breach of Fiduciary Duty, Count II for Conversion, Count VIII for Civil RICO and Count IX for violations of LMRDA</u>

In the July 21, 2006 Order, this Court held that Plaintiffs, as former Unity House members, met the case or controversy requirement for standing because Plaintiffs suffered an injury

> when they were wrongfully dispossessed of their membership in Unity House as a result of Unity House's

17

> conversion from a nonprofit corporation with members to one without members.  Loss of voting rights and the ability to participate in an organization is a sufficiently particularized injury to form a basis for federal standing.

(July 21, 2006 Order at 11-12.)  This Court further explained that

> Although this Court holds that Plaintiffs have adequately plead sufficient facts to establish standing under equitable principles, Plaintiffs must still show that they were wrongfully deprived of their membership status through fraud or other improper conduct by . . . Defendants before they may assert any derivative claims on behalf of Unity House.  Absent such a showing, Plaintiffs lack standing under Rule 23.1 as they were not members of Unity House at the time the alleged acts occurred.

(July 21, 2006 Order at 25.)

Defendants argue that Plaintiffs do not have equitable standing to bring their breach of fiduciary duty claim, their conversion claim and their civil RICO claim to the extent those claims are based upon alleged acts that are not related to the divestment of Plaintiffs' membership rights.  Specifically, Defendants claim that in their FAC, Plaintiffs allege that Defendants breached their fiduciary duty by failing to maintain Unity House's charitable tax exempt status, yet, Plaintiffs do not allege a nexus between alleged director conduct in jeopardizing the tax exempt status and the loss of Plaintiffs' membership rights.  Similarly, Defendants assert that Plaintiffs do not have equitable standing to

18

challenge an alleged failure by the directors to monitor the internal management of

Unity House since Plaintiffs do not suggest that such conduct caused them to lose

their membership rights.  Defendants likewise argue that Plaintiffs do not have

equitable standing to bring their allegations that directors made improper

investments or business decisions, pursued unsound criminal practices, engaged in

self-dealing and conversion of assets, and violated the RICO statutes through wire

fraud and embezzlement[1] since Plaintiffs cannot make a connection between these

alleged acts and the conversion of the corporation to a nonmember corporation,

which is what led to the divestment of their membership voting rights.  Defendants

state that Plaintiffs should be left with only those derivative claims that arise out of

the very transaction that divested them of their membership rights.  Specifically,

the breach of fiduciary duty claim and conversion claim should only be based upon

the allegations in paragraphs 227 and 291to 303 of the FAC, and the civil RICO

claim should only be based on mail fraud.

     Plaintiffs argue that once they demonstrate that Defendants

wrongfully divested them of their membership rights, they will have standing to

---

    [1]Defendants do not contest that Plaintiffs have equitable standing to bring Count VIII for civil RICO violations based upon mail fraud, since those allegations specifically address the loss of Plaintiffs' membership rights in Unity House. (Unity House's Mot. at 18.)

bring their derivative claims based on actions that are unrelated to the divestment

of their membership.  Plaintiffs cite a footnote from the July 21, 2006 Order in

which this Court stated "[e]ven assuming arguendo, that Plaintiffs can only assert a

claim directly against RICO Defendants for improper divestment of their

membership, a Court order invalidating the vote would reinstate Plaintiffs'

membership thereby allowing them to exercise their concomitant right to assert a

derivative claim on behalf of Unity House."  (July 21, 2006 Order at 24 n.13.)

This footnote was in relation to this Court's finding that in the light most favorable

to Plaintiffs, while loss of membership status could be characterized as an

individualized claim, Plaintiffs alleged a sufficient injury to the corporation since

they "allege[d] that the transformation of Unity House was closely intertwined

with . . . Defendants' plan to engage in the improper acts and malfeasance against

Unity House by eliminating an essential check and balance on the discretion of the

President and Board of Directors and their accountability for actions."  (July 21,

2006 Order at 24.)

Federal Rule of Civil Procedure 23.1 and the equitable standing

doctrine require that a plaintiff have an interest in the stock of a corporation in

order to sue derivatively on its behalf because only a party with an on-going

proprietory interest in the corporation will adequately represent the corporation's

20

interests in a derivative action.  See Lewis v. Knutson, 699 F.2d 230, 238 (5th Cir.

1983).

Here, Defendants are relitigating the issue decided in the July 21,

2006 Order.  Indeed, this Court already considered the application of Federal Rule

of Civil Procedure 23.1 and the Kona Enter. Inc. v. Estate of Bishop, 179 F.3d 767

(9th Cir. 1999) case and found that Plaintiffs had equitable standing to bring their

derivative claims if they establish that they were wrongfully deprived of their

membership status.  (See July 21, 2006 Oder at 22-25.)  As this Court previously

noted, in the light most favorable to Plaintiffs as the non-moving party, the

derivative claims are closely intertwined with the act that divested Plaintiffs of

their membership since Plaintiffs assert that the reason they were divested was so

that Defendants could engage in the improper acts that form the basis of the

derivative claims.  Furthermore, Defendants did not seek reconsideration of this

Court's July 21, 2006 Order.  Since the claim for an alleged fraudulent divestment

of membership is unresolved, Plaintiffs' derivative claims are also still at issue.

See Mroz v. Hoaloha Na Eha, Inc., 360 F. Supp. 2d 1122, 1136 (D. Haw. 2005)

(the plaintiff's "inability to provide evidence of their ownership of shares of [the

new company] does not destroy the derivative causes of action asserted in their

complaint," since the plaintiffs had alleged that they would be shareholders but for

the alleged fraudulent acts resulting in the merger); <u>Brachman v. Hyman</u>, 299 N.W. 101, 103 (Mich. 1941) ("Where the fraudulent deprivation of stock from the individual is connected with wrongs to the corporation, individual as well as corporate relief may be sought in the same suit.").

Because the derivative claims are intertwined with the transaction that divested Plaintiffs of their stock, Plaintiffs can adequately represent the corporation's interests in a derivative action, if they prove their divestment was fraudulent or wrongful.  <u>See</u> <u>Schupack v. Covelli</u>, 498 F. Supp. 704, 706 (W.D. Pa. 1980) (finding "the necessary commonality of interest between the individual plaintiff and the corporation" since the corporate injury and shareholder's right to rescission arose out of the same transaction).  Therefore, the policies behind limited standing in derivative suits are satisfied.

Moreover, Rule 18(b) of the Federal Rules of Civil Procedure provides that "whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action." Fed. R. Civ. P. 18(b).  Analyzing former Equity Rule 26, which Rule 18 was patterned after, the court in <u>Willcox v. Harriman Sec. Corp.</u>, 10 F. Supp. 532, 536 (S.D.N.Y. 1933), allowed a cause of action by former shareholders for

rescission to be brought simultaneously with a derivative action since the actions

were not disconnected.  The court stated that

> unless the plaintiffs can establish their status as
> stockholders of the Liberty Bank their whole suit fails.
> What is the alternative? If the two matters cannot be
> united in one suit, the plaintiffs may presently sue only to
> recover their stock; for the redress of wrongs done to
> their corporation they would be obliged to wait until they
> had prevailed in the suit for rescission of the exchange of
> stock. By that time all chance of obtaining effective relief
> on behalf of the corporation might have passed. The
> balance of convenience is in favor of permitting the
> joinder.

Id.

Likewise, here, one who has been wrongfully deprived of his or her

voting rights should be allowed to maintain in one proceeding a cause of action for

the alleged fraudulent divestment, and a cause of action for the enforcement of the

rights of the corporation, even where the actual bases of the causes of action are

not directly related.  See Richardson v. Blue Grass Min. Co., 29 F. Supp. 658, 663

(E.D. Ky. 1939) (pursuant to Rule 18(b) the plaintiff could maintain one

proceeding in equity to recover his stock, to require the individuals and the

corporations to account for dividends paid on his stock, and to secure relief on

behalf of the corporation), aff'd, 127 F.2d 291 (6th Cir. 1942); see also Greer Inv.

Co. v. Booth, 62 F.2d 321, 324 (10th Cir. 1932) (finding that the bill was not

rendered multifarious by including the restoration of shareholder's stock since that was incidental relief which may be joined with the derivative action by other shareholders due to the common point of litigation).

Therefore, in the event Plaintiffs meet the numerosity requirement, as discussed above, Plaintiffs have equitable standing to pursue the derivative causes of action upon a showing that they were fraudulently divested of their membership. As this Court previously stated, if Plaintiffs are unable to prove wrongful divestment, Plaintiffs lack standing to bring their derivative claims.

B.    The Business Judgment Rule as Applied to All Derivative Claims

Defendants next contend that Unity House's decision to reject Plaintiffs' demand letter was a valid exercise of business judgment.  Therefore, Defendants argue that Plaintiffs' derivative claims should be dismissed because Fishman and Boersema acted independently when they decided not to allow Unity House to pursue this litigation and their decision is entitled to deference under the business judgment rule.  Further, Defendants Boersema, Fishman and Enos claim that the FAC does not allege legal grounds for recovery against them as no claim for relief is alleged directly against them, and there is no allegation of specific wrongdoing by them.

24

Plaintiffs allege that they should be permitted to assert a wrongful refusal claim against the directors who made the decision not to pursue the lawsuit. Defendants argue that "wrongful refusal" is not found in any of the eleven counts in the FAC, and even if it were inferred, the board's refusal to pursue litigation does not create a separate cause of action for "wrongful refusal," but instead allows for a demand-refused derivative action. This Court agrees. Indeed, none of the cases cited by Plaintiffs support their argument that "wrongful refusal" is a separate cause of action.

However, as acknowledged by the New Directors, allegations of wrongful refusal could be used to support Plaintiffs' derivative cause of action, specifically, their cause of action for breach of fiduciary duty as against the New Directors. Accordingly, the issue is whether Plaintiffs alleged sufficient facts to support a claim for breach of fiduciary duty for allegedly wrongfully refusing to bring this lawsuit.

Boersema and Fishman argue that they were appointed as directors by this Court and therefore are independent. Enos argues that he was never a member of the advisory committee that recommended not to pursue the lawsuit. Boersema and Fishman further argue that their decision is protected by the business judgment rule and thus, the FAC should be dismissed as to them. The other director

25

Defendants join in this argument and state that if the business judgment rule applies, then all of the derivative claims should be dismissed.

In general, "whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors . . . ." United Copper Secs. Co. v. Amalgamated Copper Co., 244 U.S. 261, 263-264 (1917). The shareholder derivative action was developed as a check on the board's power, to allow shareholders to bring "suit to enforce a corporate cause of action against officers, directors, and third parties" where those in control of the company refuse to assert a claim belonging to it. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991). Prior to bringing such a lawsuit, however, the shareholder must either make a demand on the board of directors that the corporation bring the suit, or show that demand is excused as futile. Id. at 96; Fed. R. Civ. P. 23.1; Haw. Rev. Stat. § 414D-90 ("A complaint in a proceeding brought on behalf of a corporation shall . . . allege with particularity the demand made, if any, to obtain action by the directors, and either why the complainants could not obtain the action or why they did not make the demand.").

Here, after the demand was made, the Board appointed an advisory committee to investigate the allegations in the proposed lawsuit and determine

26

whether pursuing the litigation would be in the best interests of the corporation.

The advisory committee, consisting of Boersema, Fishman, and possibly Enos,

recommended that the Board refuse to pursue the demanded action.  Plaintiffs then

brought this demand-refused derivative action.  Defendants assert that the business

judgment rule applies in demand-refused actions and specifically, in this case,

because the committee consisted of two directors, who had been appointed by this

Court, and did not include any interested directors.

      The business judgment rule applies in demand-refused derivative

actions and controls the propriety of a rejection of a demand.  <u>See</u> <u>Allison on

Behalf of Gen. Motors Corp.</u>, 604 F. Supp. at 1121 (D. Del. 1985).  Under the

business judgment rule, directors will not be held liable "for honest errors, for

mistakes of judgment, when they act without corrupt motive and in good faith

 . . . ."  <u>Lussier v. Mau-Van Develop., Inc.</u>, 667 P.2d 804, 816 (Haw. App. 1983)

(citation omitted).  A "directors' conduct meets the "business judgment" test when,

in making a business decision, the directors have acted on an informed basis, in

good faith, and in the honest belief that the action taken was in the best interests of

the company."  <u>Fujimoto v. Au</u>, 19 P.3d 699, 732 (Haw. 2001).

      Whether or not the business judgment rule should be expanded to

situations where an advisory committee of allegedly disinterested directors makes a

determination not to bring a lawsuit, which is then accepted by a majority of interested directors, is a matter of State Law.  Burks v. Lasker, 441 U.S. 471, 486 (1979).  "[T]he role of the federal court . . . is limited to two inquiries: whether the relevant state law allows the board to delegate power to dismiss the action to a special litigation committee, and whether such state laws are consistent with relevant federal law."  Lewis v. Anderson, 615 F.2d 778, 781 (9th Cir. 1979).

There is no Hawaii case law directly on point regarding whether the business judgment rule should be expanded to situations such as this, where a committee of allegedly disinterested directors decides to reject a shareholder demand for suit and that determination is accepted by a majority of interested directors.  However, Hawaii Revised Statute section 414D-148 authorizes the board of directors to appoint committees of at least two members to exercise the board's authority, as permitted by the board or the governing documents.  Haw. Rev. Stat. § 414D-148.  The statute provides that a committee may not, however, engage in certain actions, such as authorizing distributions, approving dissolution or merger, electing or removing directors, among other actions.  Id.  Nowhere does the statute provide that the board may not authorize the committee to decide whether to pursue a lawsuit on the corporation's behalf or reject a shareholder demand letter.  If the State legislature wanted to prohibit a committee from

28

determining whether or not to reject a shareholder demanded lawsuit, it could have

included that prohibition in the statute.  Since the statute's terms are unambiguous

and explicit, this Court must give effect to that meaning.  See Enoka v. AIG Haw.

Ins. Co., Inc., 128 P.3d 850, 857 (Haw. 2006).  Accordingly, applying the general

rules of statutory interpretation, this Court finds that Hawaii law allows a board of

directors to appoint a committee to determine whether or not to pursue litigation

and/or reject a shareholders' demand.

        This holding is consistent with other courts' holdings that interpreted

nearly identical state statutes to allow the business judgment rule to apply to such

decisions made by a committee.  Indeed, in Lewis, the court interpreted

California's statute that allowed the board to appoint committees to act on its

behalf and found that the business judgment rule applied to any reasonable, good

faith determination made by that committee.  615 F.2d at 782-83; see also

Auerbach v. Bennett, 47 N.Y.2d 619, 623 (N.Y. 1979) (". . . the substantive aspects

of a decision to terminate a shareholders' derivative action against defendant

corporate directors made by a committee of disinterested directors appointed by the

corporation's board of directors are beyond judicial inquiry under the business

judgment doctrine . . .");  Abbey v. Control Data Corp., 603 F.2d 724 (8th Cir.

1979) (finding that the Delaware statute allowed the business judgment rule to

29

extend to the decision of a committee to dismiss a derivative action against board members).

"Unless the business judgment rule does not protect the refusal to sue, the shareholder lacks the legal managerial power to continue the derivative action, since that power is terminated by the refusal." <u>Allison on Behalf of General Motors Corp.</u>, 604 F. Supp. at 1121(internal quotations and citation omitted).  It is for this Court, therefore, to determine whether the rejection of the demand was wrongful. <u>Id.</u>  "On a motion to dismiss because of rejection of the demand, the Court simply assesses the allegations of the complaint to determine if plaintiff alleges legally sufficient reasons to call into question the validity of the Board of Directors' exercise of business judgment."  <u>Id.</u>  It is the Plaintiffs' burden to allege with particularity that the Board or committee in this case, either was tainted by self-interest, acted in bad faith or fraudulently, or through gross negligence failed to reach an informed decision.  <u>Id.</u> at 1122.

Here, Count I does not include the New Directors as defendants for that Count.  However, in Count I of the FAC, Plaintiffs allege that the other director defendants breached their fiduciary duties by "failing and refusing to institute legal action against those officers, directors, and employees responsible for permitting Unity House to engage in unlawful and fraudulent practices."

30

(Compl. ¶ 228(f).)  The FAC also alleges that the Board should have formed a special litigation committee ("SLC") to investigate the derivative claims and that the advisory committee did not have final and binding authority to act on behalf of Unity House.  (Id. ¶¶ 186-88.)  The FAC states that the advisory committee did not conduct a thorough investigation, but merely read the complaint, consulted with Unity House's counsel, rather than separate legal counsel, and evaluated the benefits and costs to Unity House that could flow from an actual SLC investigation.  (Id. ¶¶ 189-91.)  The FAC further alleges that the advisory committee did not prepare a written report, and that by the board accepting the advisory committee's recommendation to not form a SLC, the interested Board made the final decision.  The FAC states that eight out of ten of the directors are named as defendants in this lawsuit.  Plaintiffs allege that these eight directors are dominated and controlled by personal financial interest which are in conflict with the best interests of Unity House and that all but one of them owe their positions to Defendant Tony Rutledge.  The FAC further alleges that Defendants Boersema and Fishman had prior business or personal relationships with Unity House, Tony Rutledge, and/or other Defendants prior to becoming directors.  These facts are sufficient to allege wrongful refusal in violation of a fiduciary duty.

31

Therefore, this Court must make factual determinations regarding whether the committee was duly appointed, had authority to act, and whether the committee acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.  See Fujimoto, 19 P.3d at 732; see also Lewis, 615 F.2d at 780 (noting that the district court reserved for trial the factual determination of whether the committee actually made a good faith determination); Auerbach, 47 N.Y.2d at 623-624 ("the court may inquire as to the disinterested independence  of the members of that committee and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee.").  Indeed, Defendants appear to concede as much since in their motion to dismiss they set forth facts relating to the committee's decision.  For example, in their motion Defendants state "Mr. Fishman and Mr. Boersema followed a reasonable and thorough course of investigation as they examined the demand letter and draft FAC, consulted with legal counsel, and evaluated the benefits and costs to Unity House of a full [special litigation committee] investigation."  (Def. Ilae et al.'s Mot. to Dismiss FAC at 15.)

Clearly, as the parties have not stipulated to the above facts, in order to determine whether or not Unity House's decision not to pursue the derivative claims is protected by the business judgment rule, this Court would need to

examine evidence, an action which is not appropriate in determining a motion to dismiss.

With respect to Enos, Plaintiffs assert that Enos was a part of the advisory committee.  However, Enos asserts that he was not a member of the advisory committee.  As this is a motion to dismiss, and the alleged facts must be taken as true and construed in the light most favorable to Plaintiffs as the non-moving party, this Court must assume that Enos was a part of the advisory committee and therefore, the above analysis applies to him as well.

Nonetheless, even if Enos were not a member of the advisory committee, he was a director, who allegedly accepted the recommendation of the advisory committee.   For these reasons, dismissal of the derivative claims against any of the Defendants based solely on the business judgment rule is inappropriate at this time.  See Allison on Behalf of Gen. Motors Corp., 604 F. Supp. at 1120 ("Because a derivative suit is on behalf of the corporation, and because the Board of Directors' decision as to what is in the corporation's best interest is ordinarily respected, the GM Board's rejection of the demand means that this lawsuit should be terminated unless plaintiff can show why the Board's decision was wrongful or why the requirements of the business judgment rule have not been met."); compare Harhen v. Brown, 730 N.E.2d 859, 867 (Mass. 2000) (applying the business

judgment rule to the decision of the disinterested board, and dismissing the

complaint because the plaintiff failed to allege facts of bad faith or that the board

failed to investigate her demand).   However, as set forth above, derivative claims

Counts I, II, and VIII, have been dismissed without prejudice for failure to meet

the numerosity requirement, and Plaintiffs have standing to refile such claims, if

they are granted leave to amend the FAC.

      C.    <u>Count VII for Civil RICO Based on Mail Fraud Brought by Local 5</u>

      Defendants argue that Plaintiff Local 5 lacks standing to pursue the

civil RICO claim set forth in Count VII because the predicate acts did not cause a

sufficiently concrete injury to Local 5.

      In the previous order, this Court held that

> Plaintiffs lack standing to assert allegations of unlawful
> payments through wire fraud, unlawful payments to labor
> unions, and illegally embezzling funds from Unity
> House.  These specific claims involve an injury to Unity
> House, and a suit under RICO for injuries to the
> corporation . . . [can] only be brought by the corporation
> itself or by a shareholder suing derivatively on behalf of
> the corporation.  However, Plaintiffs' claim of mail fraud
> relates to Plaintiffs' personal injury for their loss of
> membership and ability to participate in the voting
> process of Unity House.  The Court finds that this is a
> sufficient concrete injury.

(July 21, 2006 Order at 35-36) (internal quotations and citation omitted, ellipses

and brackets in original).  Defendants argue that the previous order implicitly

34

found that Local 5 had not alleged a sufficiently concrete injury.  This Court

disagrees.  The order did not specifically discuss Local 5's injuries.  Thus,

Defendants' "law of the case" doctrine argument fails.

Defendants also assert that Local 5 cannot claim injury based on

predicate acts of wire fraud and embezzlement, since this Court already held that

those alleged acts caused injuries specific to Unity House.  This Court agrees.

Indeed, Plaintiffs clarified in their opposition that the predicate acts of wire fraud

and union embezzlement are not offered to establish the RICO injuries of Local 5,

but are listed in the FAC to demonstrate patterns of racketeering activity, which

allegedly pose a continued threat of criminal activity by the Defendants who

remain on the Board of Unity House.  (Pls.' Opp'n at 12, 17-18.)

Defendants also assert that Local 5's alleged injury is far too

attenuated to stand.  Specifically, Defendants argue that Local 5 has not properly

alleged that their injury of the raiding activity at Kaiser Permanente and Hale Nani

Rehabilitation Center in the Spring and Summer of 2004 was proximately caused

by the pattern of racketeering activity based upon the predicate acts of mail fraud.

A RICO plaintiff must establish that his or her injuries were

proximately caused by the predicate acts of the alleged RICO violation.  <u>Anza v.

Ideal Steel Supply Corp.</u>, 126 S. Ct. 1991, 1996-98 (2006).  A plaintiff may only

recover under a RICO action to the extent that "he has been injured in his business or property by the conduct constituting the [RICO] violation." <u>Sedima, SPOC v. Imrec Co.</u>, 47 U.S. 479, 495 (1985).  A plaintiff's injuries must "flow from" the predicate acts, and may not be too remote.  <u>Anza</u>, 126 S. Ct. at 1996-98.  There must be a direct relationship between the predicate acts and the injury to establish proximate cause.  <u>See</u> <u>Lui Ciro, Inc. v. Ciro, Inc.</u>, 895 F. Supp. 1365, 1379 (D. Haw. 1995).  In considering the directness of the causal link, a court should consider the "difficulty that can arise when a court attempts to ascertain the damages caused by some remote action."  <u>Anza</u>, 126 S. Ct. at 1997.  This rule "has more to do with problems of proof than with foreseeability."  <u>Lui Ciro</u>, 895 F. Supp. at 1379 (internal quotation marks and citation omitted).

Here, this Court previously found that Plaintiffs sufficiently alleged a violation of Civil RICO since they alleged a pattern of racketeering activity based upon mail fraud on three separate occasions.  This Court also found that Defendants did so with the specific intent to defraud based in part on Plaintiffs' allegation that the purpose of the conspiracy and scheme to defraud were to prevent Local 5 and 996 from asserting rights to the assets of Unity House, and restoring the original relationship between two other unions and Unity House. (July 21, 2006 Order at 40.)  In the FAC, Plaintiff Local 5 again claim that the

36

alleged mail fraud allowed Defendants to change Unity House's corporate purpose, which enabled Defendants to provide Unity House funds, personnel and resources to HHHCWU in order that it may raid Local 5.  Plaintiffs assert that first set of funds transferred or loaned to HHHCWU occurred on the same day that Unity House filed its Articles of Amendment.  Plaintiffs claim that Local 5's damages can be ascertained by considering the costs of counter-raiding efforts by Local 5 during the time period of the Kaiser contract negotiations and the HHHCWU decertification campaign at Kaiser and Hale Nani in 2004.

This Court finds that in the FAC Plaintiff Local 5 has adequately alleged an injury, and finds that the injury is not too remote.  Indeed, the raiding of Local 5 is alleged to be a direct purpose of the scheme to defraud and there is an allegation that funds were provided to the raiding union on the same day that Unity House changed its membership status.  Defendants have not provided any other reasons why Local 5 was raided or argued that funds, if any, were provided to that union for other purposes.  Neither have Defendants asserted that some other intervening act caused the raiding activity.  Accordingly, Defendants' motion with respect to Count VII is DENIED.

III.    Count IV, Proxyholder Abuse Claim

Plaintiffs allege that Tony Rutledge and his supporters fraudulently obtained proxies, that Defendant Arlene Ilae obtained at least 30 proxies by fraudulent inducement and that Tony Rutledge voted these allegedly fraudulently obtained proxies at the Special Meeting, and voted proxies that were over three years old.  Defendants argue that Plaintiffs fail to state a claim for fraudulent campaign to solicit proxies because Plaintiffs have not linked the fraudulent proposal with the number of proxy votes required to authorize the challenged action.[2]  Defendants further claim that Plaintiffs' allegation that 31 members were induced to sign proxies is far short of the votes necessary to pass the resolution based on Plaintiffs' allegation that the number of former Unity House members is above ten thousand.  Defendant Aaron Rutledge points out that the FAC identifies only one specific person, Plaintiff Aarona, who signed a proxy in favor of Tony Rutledge.

-----

[2] Defendants also argue that Count IV asserts a novel equitable action for proxyholder abuse and that the action is not predicate act for the civil RICO claim or independently actionable because Plaintiffs have not alleged it traversed state boundaries.  Defendants cite to one case, which discussed the lack of interstate nature of a telephone call.  Defendants did not further articulate their argument or supply an analysis of the cited case to the facts of this claim.  Accordingly, this Court will not address that argument.

Plaintiffs contend that the number of fraudulently solicited proxies cannot be determined on a motion to dismiss.  Plaintiffs believe that thousands of fraudulent solicitations and invalid proxies will be revealed through discovery.  Plaintiffs also contend that questions remain as to whether proxies may be voted to eliminate the proxy signer's membership rights, whether proxies may be voted pursuant to a statute that was enacted after the execution of the proxy and whether proxies may be voted in a special membership meeting without prior notice and approval of by the proxyholders.

Although proxyholder abuse may be a novel title for a claim, it appears that Plaintiffs are attempting to bring a general claim of fraud.  Regardless of the title of the claim, however, Plaintiffs must have allegations that there were enough invalid, out-dated, or fraudulently obtained proxies to have passed the resolution to change Unity House to a non-member corporation.  Where there exists more than ten thousand members, an allegation that thirty persons were fraudulently induced, without more, is insufficient to sustain such a claim.  Thus, Count IV is DISMISSED.  However, at the hearing Plaintiffs' counsel stated that he represents another 2,700 persons and that some of them may have been fraudulently induced to sign proxies.  Plaintiffs should have some idea of the maximum number of persons that were shareholders at the time of the change of

membership status.  Therefore, this Court DISMISSES Count IV without

prejudice.  Plaintiffs may amend their FAC to bring Count IV again only if they

can show that discovery will reveal that the number of allegedly out-dated, invalid,

or fraudulently induced proxies was sufficient to pass the challenged change of

corporate status.

IV.    <u>Count VI, Civil RICO Claim Brought by Individual Plaintiffs and as a Class</u>

In Count VI, individual Plaintiffs have brought a civil RICO claim.

Defendants argue that Count VI fails to state a claim because this Court has already

found that Plaintiffs' loss of membership rights in Unity House does not entitle

Plaintiffs to recover monetary damages, and a private plaintiff in a Civil RICO

claim cannot solely seek injunctive relief.  Plaintiffs assert that they also seek

declaratory relief for this Court to invalidate the vote, declare existing Unity House

proxies invalid, and restore membership rights of former members.

In the previous order, this Court found that:

> Plaintiffs' prayer for relief requests damages only with
> respect to their claim for violations of Civil RICO.  As
> explained <u>infra</u>, Plaintiffs' claim against RICO
> Defendants are limited to loss of their membership status
> with Unity House.  Plaintiffs' loss of membership does

not entitle them to recover monetary damages.  Furthermore, any recovery of

monies or assets illegally converted by RICO Defendants would flow to Unity

House in the event that Plaintiffs can amend their Complaint to assert a derivative

cause of action.

(July 21, 2006 Order at 16-17.)

      The Ninth Circuit has held that injunctive relief is not available as a remedy for a private plaintiff in a civil RICO case.  <u>Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.</u>, 185 F.3d 957, 968 (9th Cir. 1999) ("[I]njunctive relief is not available to a private party in a civil RICO action.") (quoting <u>Religious Tech. Ctr. v. Wollersheim</u>, 796 F.2d 1076, 1084 (9th Cir. 1986)).  One reason for so holding was that since the

> statute provides an elaborate enforcement scheme that confers authority to sue on both government officials and private citizens, it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens.  In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.

<u>Religious Tech. Ctr.</u>, 796 F.2d at 1088 (citations and internal quotation marks omitted).

      The Ninth Circuit has recognized that the purpose of the RICO statute is to combat organized crime in its "invasion and acquisition of legitimate business enterprises and property."  <u>Oscar v. Univ. Students Co-op. Ass'n</u>, 965 F.2d 783, 786 (9th Cir. 1992).  The Ninth Circuit, therefore, has also refused to enlarge "Congress' specific limitation of RICO recovery to business and property" and allow monetary recovery for personal injuries.  <u>Id.</u>  The Ninth Circuit noted that

personal injury recovery need not be included under a RICO claim because "[a]mple law already exist[s] to provide recovery for wrongfully inflicted personal injuries.  The unavailability of a civil RICO treble damages action for personal injuries in no way restricts the plaintiff's right to bring a pendent state wrongful death or personal injury action along with a RICO action for damages to business and property."  Id.

The Ninth Circuit has not considered whether declaratory relief is available to a private party in a civil RICO action.  See All World Prof'l Travel Servs., Inc. v. Am. Airlines, Inc., 282 F. Supp. 2d 1161, 1177 (C.D. Cal. 2003).  However, based upon the reasoning set forth above, this Court finds it unlikely that declaratory relief would be allowed under the circumstances of this case.  First, if Congress wanted to allow declaratory relief by private parties, it could have set forth such remedy in the elaborate remedial scheme provided in the RICO statute.  Second, Plaintiff may seek the same relief under State law or through other claims.  Finally, Plaintiffs are essentially asking this Court to take mandatory injunction type actions (e.g. invalidate proxies, invalidate a vote of corporate status change, and then restore members to the corporation), actions which are clearly prohibited under Ninth Circuit law.  See generally, Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1310 (9th Cir. 1992) (a showing of injury for RICO claims requires

42

concrete financial loss and more than intangible property interests); <u>Berg v. First State Ins. Co.</u>, 915 F.2d 460, 464 (9th Cir. 1990) (actual financial loss or injury is required to recover under RICO).

Accordingly, Count VI is DISMISSED with prejudice for failure to state a claim.

V.    <u>Counts VII and VIII, Civil RICO Claims Based on Mail and Wire Fraud</u>

Defendants argue that Plaintiffs have not sufficiently alleged a single predicate act of mail fraud or wire fraud and thus the Civil RICO claims should be dismissed.[3]  Count VII alleges a Civil RICO claim by Local 5, and Count VIII alleges a derivative civil RICO claim.

To prove mail fraud, a plaintiff must show that "(1) the defendants formed a scheme to or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1396, 1399-1400 (9th Cir. 1986).

Moving Defendants assert that they cannot be found liable for participating in the scheme to defraud because they lacked the requisite intent to

---

[3] As Count VI has been dismissed with prejudice, this Court will not address this argument with respect to Count VI.

43

defraud.  Moving Defendants state that the FAC alleges that Tony Rutledge and

Aaron Rutledge did not disclose information to the Board that was material to its

consideration of approving the Special Meeting.  At that time, the Board consisted

of Moving Defendants.  Defendants argue that it logically follows from such

allegation that if the Rutledges did not disclose material information to the Board,

then the Moving Defendants could not have been aware of the Rutledges' alleged

pattern and practice of obtaining Unity House services and monies for their own

personal benefit, and therefore, they lacked the specific intent to participate in such

scheme.

Plaintiffs claim that Defendants are merely rehashing their previous

arguments, which were already determined in this Court's previous order.  This

Court agrees.  In the previous order, this Court found that "Plaintiffs have

sufficiently alleged that RICO Defendants formed a scheme to defraud Plaintiffs,

through use of the United States mail service, and that RICO Defendants did so

with the specific intent to defraud."  (July 21, 2006 Order at 40) (emphasis added).

Furthermore, Plaintiffs allege that there were six purposes of the Defendants'

scheme.  The fact that Moving Defendants may have been ignorant of one aspect of

the multi-purpose scheme does not negate their knowledge of the conspiracy and

scheme to defraud.

44

Defendants next argue that Plaintiffs have failed to identify any material misrepresentations or omissions in any of the documents or conversations upon which they base their claims of fraud.  Plaintiffs base their claim of mail fraud on: 1) the November 3, 2003, mailing of a Unity House newsletter from various Defendants advising Unity House members of the Board's meeting ("November Newsletter"); 2) the Notice of special meeting; and 3) the June 23, 2004, letter to Unity House beneficiaries, also members of Local 5, advising them that Unity House had to withhold benefits ("June Letter").  Plaintiffs base their claim for wire fraud on: 1) the facsimile of two letter agreements and the transfer of Unity House funds in connection with a failed transaction between Unity House, Beacon Edge Pictures, and the Hawaii Pacific Cinema Development Fund ("Beacon Edge Transmissions"); and 2) phone conversation between Tony Rutledge and an unnamed professional wherein they discuss moving Unity Hose assets offshore (the "John Doe Conversations").

In the FAC, Plaintiffs allege that the Notice contained misrepresentations, misleading statements and omissions and specified those statements.  (FAC ¶¶ 93, 99, 100-03.)  Plaintiffs do not allege that the November Newsletter or June Letter contained fraudulent statements or omissions.  As held by the Supreme Court, "[t]he mailing need not contain any misrepresentations.

45

Rather, ''innocent' mailings-ones that contain no false information-may supply the mailing element.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1413 -1414 (3rd Cir. 1991) (quoting Schmuck v. United States, 489 U.S. 705, 715 (1989)). The mailing need only be sufficiently related to the scheme to defraud. Id.; see also United States v. Hubbard, 96 F.3d 1223, 1229 (9th Cir. 1996) (finding that there was sufficient evidence that the mailing was sufficiently closely related to the scheme to defraud). Thus, it does not matter that the other mailings did not contain misrepresentations or omissions. Accordingly, Defendants' argument fails in this regard.

Defendants contend that any representations in the Notice are immaterial and Plaintiffs' reliance on such misrepresentations is lacking since Tony Rutledge had already obtained enough proxies to pass the resolution by himself. Defendants' argument lacks merit. First, the Ninth Circuit case cited by Defendants did not decide whether an element of individual reliance is necessary to bring a mail fraud claim, as implied by Defendants. Instead, in Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 363 (9th Cir. 2005), the court stated that in the past it declined to require a showing of reliance as the only way plaintiffs can establish causation in a civil RICO claim predicated on mail or wire fraud. The court found that it did not need to address that issue in the case

46

because the plaintiffs had plead reasonable reliance.  Id.  Similarly, here, Plaintiffs have pled that former Unity House members relied to their detriment on the statements made in the Notice.  (FAC ¶ 105.)  Furthermore, in this Court's previous order, this Court found that "[i]n order to successfully assert a RICO claim, Plaintiffs need not show any individual reliance, but only that Defendants had the subjective intent to conduct the activities to defraud them."  (July 21, 2006 Order at 17) (citing Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1396, 1399-00 (9th Cir. 1986) ("In a charge involving mail or wire fraud, it is not necessary to show that . . . the intended victim suffered a loss)).

Defendants further assert that the November Newsletter, June Letter, New Unions Newsletter and John Doe Conversations pertain to the occurrence of future events and therefore are not actionable as fraudulent misrepresentations. Plaintiffs, however, have clarified that only the Notice contained fraudulent statements.  Therefore, it is irrelevant that these mailings and conversations allegedly only pertained to the occurrence of future events.

Defendants next argue that the June Letter, New Unions Newsletter and John Doe Conversations occurred after the fruition of the scheme to transform Unity House and therefore were not incidental to an essential part of the scheme or a step in the plot.  Defendants' argument fails.  First, as stated by the Supreme

47

Court, "[t]he relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time . . . ." Schmuck, 489 U.S. at 715.  The Supreme Court rejected the argument that mailings that someday may contribute to the uncovering of a fraudulent scheme cannot supply the mailing element of the mail fraud offense.  Id.  Furthermore, Plaintiffs have alleged not only a scheme to convert Unity House's membership status, but also a scheme to defraud Unity House of property and other assets and to use its assets as a source of financial benefit for various individual Defendants.  Thus, the entire scheme to defraud did not come to fruition upon Unity House's change of membership status.

Accordingly, Defendants' motion to dismiss Counts VII and VIII on this basis is DENIED.

## VI.    Count IX for Violations of LMRDA

Defendants argue that assuming Plaintiffs have equitable standing to pursue derivative claims, Count IX fails because Plaintiffs have not adequately pled that Unity House is a labor organization under 29 U.S.C. § 501 and therefore, this Court lacks jurisdiction over this case.  Plaintiffs assert that this issue is not appropriate on a motion to dismiss, but instead requires proof that should be addressed in a motion for summary judgment.

48

As this Court has found that if Plaintiffs amend their FAC and meet the numerosity requirement, which they appear able to do, and found that Plaintiffs have equitable standing to bring their derivative claims, including their derivative Civil RICO claim in Count VIII, this Court would continue to have federal question jurisdiction over this case without regard to Count IX.

Nevertheless, Defendants also argue that this Count fails because Plaintiffs fail to specify facts to support their assertion that Unity House acted as a labor organization.  This Court agrees.  Pursuant to 29 U.S.C. § 501, an entity must be engaged in an industry affecting commerce to be deemed a labor organization. A labor organization is engaged in an industry affecting commerce if it is the certified representative of employees, or is recognized or acting as the representative of employees of an  employer that is engaged in an industry affecting commerce.  29 U.S.C. § 402(j).  Also, pursuant to 29 U.S.C. § 431, a labor organization must file annual reports with the Secretary of Labor.  A labor organization exists for the purpose of dealing with employers regarding labor disputes, wages, hours and other terms and conditions of employment.  29 U.S.C. § 402.

Defendants assert that Plaintiffs have not alleged any facts establishing that Unity House represents employees, files annual reports, or exists

49

to deal with employers regarding wages or terms of employment.  Plaintiffs do not refer to their FAC as support for their claim that they have sufficiently pled that Unity House acted as a labor organization.  Plaintiffs contend that in their opposition to the motion to dismiss the original complaint, they submitted substantial evidence that created a genuine issue of fact on whether or not Unity House acted as a labor organization and that this Court deferred resolution of the issue because it was mixed question of law and fact.  Plaintiffs are mistaken.  Although this Court noted that Plaintiffs alleged that Unity House had been registered and filed tax returns as a tax exempt labor organization, and that Plaintiffs submitted certain exhibits, this Court did not make a finding that a genuine issue of material fact existed.  Indeed, this Court specifically stated that it did not resolve the issue.  (July 21, 2006 Order at 9.)

Furthermore, Plaintiffs did not cite to any pages or exhibits of that previous opposition.  Moreover, the previous opposition referred to Plaintiffs' original Complaint.  Since the Complaint has been amended, Plaintiffs previous opposition is not presently before this Court.  Plaintiffs have a duty to specifically inform this Court which paragraphs of their FAC support their claim.  See generally Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court

record not otherwise referenced in the separate concise statements of the parties."). Nevertheless, the pertinent sections of the FAC did not include any specific non-conclusory allegations of fact that could establish that Unity House is a labor organization.

Accordingly, Count IX is DISMISSED.  However, because Plaintiffs claim that they have evidence to establish that Unity House is a labor organization, Count IX is DISMISSED without prejudice.

Defendants next argue that if Unity House were a labor organization, Plaintiffs' claim would fail because they are attempting to find Unity House liable for the actions of two independent unions and Hawaii courts have not applied the alter ego theory to allow the piercing of the corporate veil to a non-corporation, such as a labor organization.  Plaintiffs point out that both Unity House and HHHCWU are corporations, and thus, their argument fails.  This Court agrees. Although Plaintiffs may not have alleged that HHHCWU was a corporation in the FAC, since this Count is being dismissed without prejudice, Plaintiffs can include such allegation in an amended complaint.  Likewise, the amended complaint, if any, can address Defendants' arguments, which were made for the first time in their reply brief, that Plaintiffs failed to allege a cause of action against HHHCWU

that would merit imposing liability on Unity House as its alter ego.  (See Moving Defendant's Reply at 19-21.)

VII.   Plaintiffs' Representation of Former Members of Unity House

Defendants allege that Plaintiffs are not adequate representatives of all the former Unity House members and therefore should not be able to pursue the class action or derivative claims in Counts I, II, III, VI, VIII and IX.  Specifically, Defendants claim that Plaintiffs have failed to recognize the differences between themselves as former Unity House members who are also current Local 5 members, and all former Unity House members, including those from Local 996, since individually named Plaintiffs assert that they also suffered the distinctive injury of "raiding" activities of the two other unions and that Tony Rutledge mailed them a letter informing them that Unity House would not provide them with benefits.

This Court previously found that Local 5's alleged injuries were distinct from the putative class, which at that time had been defined as all members and retirees of Local 5 who were members or were eligible to be members of Unity House.  (July 21, 2006 Order at 13.)  Therefore, this Court held that Local 5 did not adequately represent the putative class.  (Id.)  This Court also found that Plaintiffs had failed to allege that individual Local 5 members were adequate representatives

since the Plaintiffs did not carefully define the class and made no allegations that the members fairly and adequately protect the interests of the class.  (Id. at 14.)

In the FAC, Plaintiffs redefined the class as "all Unity House members who were disenfranchised of their membership rights by virtue of the Director Defendants' fraudulent transformation of Unity House from a membership-based organization to a non-membership-based organization."  (FAC ¶ 209.)  Plaintiffs have clarified that Local 5 is not a class member or a class representative.  Plaintiffs state that the individual Plaintiffs were Unity House members at the time of the transformation.  (FAC ¶ 207.)  Plaintiffs further allege that the "individual Plaintiffs' claims are typical of the claims asserted on behalf of the Class" since they each "sustained the same loss of their Unity House membership rights" through the same conduct of the Defendants.  (FAC ¶ 211.) Plaintiffs next assert that the individual Plaintiffs are not subject to unique defenses, do not have different claims from other members of the class, do not have adverse interests, and that they will fairly and adequately protect the interests of the members.  As Plaintiffs are not asserting that the class suffered a "raiding activity," and are only asserting that the class suffered the loss of membership rights, this Court finds that the FAC alleges enough facts for the individual Plaintiffs to maintain class and derivative claims.  See Fed. R. Civ. P. 23.2.

VII.    <u>Adding New Defendants</u>

The New Directors argue that Plaintiffs failed to get an order of the

Court pursuant to Rule 21 of the Federal Rules of Civil Procedure to add them as

parties to the case.  Plaintiffs argue that because Defendants Boersema and

Fishman have not filed an answer, leave of court is not required to add them as

parties, pursuant to Rule 15 of the Federal Rules of Civil Procedure.  In addition,

Plaintiffs have brought a counter-motion to add the New Directors as parties.

Rule 21 of the Federal Rules of Civil Procedure provides in part that

"[p]arties may be dropped or added by order of the court on motion of any party or

of its own initiative at any stage of the action and on such terms as are just."  Rule

15 provides "[a] party may amend the party's pleading once as a matter of course at

any time before a responsive pleading is served  . . . Otherwise a party may amend

the party's pleading only by leave of court or by written consent of the adverse

party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P.

15(a).

Since Plaintiffs filed a Counter Motion requesting to add the New

Directors, this Court need not determine whether Rule 21 or Rule 15 applies.

Instead, this Court need only determine whether the FAC has properly stated a

claim against the New Directors such that is survives the motions to dismiss or

such that Plaintiffs should be granted leave to amend.  As stated above, this Court found that if Plaintiffs meet the numerosity requirement, they had equitable standing to bring a derivative cause of action for breach of fiduciary duty against the New Directors.  This Court, however, also held that if the facts established that the New Directors were duly appointed, acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of Unity House, their alleged wrongful refusal to bring the lawsuit would be protected by the business judgment rule.

Accordingly, Defendants' argument fails.

## CONCLUSION

For the reasons stated above, this Court GRANTS IN PART and DENIES IN PART the following motions: Nominal Defendant Unity House, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"); Defendant Arlene Ilae, et al.'s Motion to Dismiss FAC; Defendant Aaron Rutledge's Motion to Dismiss FAC; Defendant Anthony A. Rutlege, Sr.'s Motion to Dismiss FAC; James Boersema and Robert Fishman's Motion to Dismiss; and Counterclaimant Adam Enos's Motion to Dismiss (WITHOUT PREJUDICE to seek leave to amend the FAC with respect to some counts); and DENIES Plaintiffs' Counter Motion for

Leave to Add James Boersema, Robert Fishman and Adam Enos as Party

Defendants AS MOOT.

   Counts I, II, V, and VIII are dismissed without prejudice for failure to

meet the numerosity requirement.  Count IV is dismissed without prejudice for

failure to link the alleged fraudulent proposal with the number of proxy votes

required to authorize the challenged action of change of membership status.  Count

VI is dismissed with prejudice for failure to state a claim.  Count IX is dismissed

without prejudice for failure to allege facts to establish that Unity House is a labor

union pursuant to 29 U.S.C. § 501.

   IT IS SO ORDERED.

   DATED:  Honolulu, Hawaii, July 2, 2007.



_____
David Alan Ezra
United States District Judge

Kaleo Aarona, et al. vs. Unity House Incorporated, et al., Civil No. 05-00197 DAE-LEK; ORDER  GRANTING IN PART AND DENYING IN PART THE FOLLOWING MOTIONS:  NOMINAL DEFENDANT UNITY HOUSE, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT ("FAC"); DEFENDANT ARLENE ILAE, ET AL.'S MOTION TO DISMISS FAC; DEFENDANT AARON RUTLEDGE'S MOTION TO DISMISS FAC; DEFENDANT ANTHONY A. RUTLEGE, SR.'S MOTION TO DISMISS FAC; JAMES BOERSEMA AND ROBERT FISHMAN'S MOTION TO DISMISS; AND COUNTERCLAIMANT ADAM ENOS'S MOTION TO DISMISS, WITHOUT PREJUDICE TO SEEK LEAVE TO AMEND THE FAC WITH RESPECT TO SOME COUNTS; and ORDER DENYING PLAINTIFFS' COUNTER MOTION FOR LEAVE TO ADD JAMES BOERSEMA, ROBERT FISHMAN AND ADAM ENOS AS PARTY DEFENDANTS AS MOOT